UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BENJAMIN RUBY, individually, and on behalf of all others similarly situated, </br></br>　　　　Plaintiff, </br></br>v. </br></br>BUILD-A-BEAR WORKSHOP, INC. </br></br>　　　　Defendant. | Case No. 4:21-cv-01152-JAR </br></br> **JURY TRIAL DEMANDED** |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Comes now Plaintiff Benjamin Ruby, through his undersigned counsel, and for his First Amended Class Action Complaint against Defendant Build-a-Bear Workshop, Inc. ("Build-a-Bear"), states as follows:

INTRODUCTION

1. This case concerns Build-a-Bear's violations of the Telephone Consumer Protection Act (TCPA) and its regulations by sending two or more text messages to members of the Do Not Call Registry without their consent in a 12-month period.

2. In the early 1990s, Congress enacted the TCPA to protect consumers' privacy rights, namely, the right to be left alone from unwanted telemarketing calls. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

3. The TCPA and its corresponding regulations afford special protections for people who registered their cell phone numbers on the National Do Not Call Registry. Specifically, the TCPA provides that each person who receives more than one call on their cell phone after being

EXHIBIT 1

registered on the National Do Not Call Registry is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

4. Plaintiff is a member of the Do Not Call Registry.

5. Build-a-Bear sent Plaintiff unwanted text messages, and expressly and repeatedly revoked his consent. By continuing to send unwelcome text messages to Plaintiff after he revoked consent, Build-a-Bear violated the TCPA and its regulations.

6. Plaintiff brings this TCPA action individually, and on behalf of all those similarly situated, to seek redress for Build-a-Bear's wrongful conduct.

## PARTIES

7. Plaintiff Benjamin Ruby is an individual who resides in Louisville, Kentucky.

8. Defendant Build-a-Bear Workshop, Inc. is a Delaware corporation with its principal place of business in St. Louis County at 1954 Innerbelt Business Center Drive, St. Louis, Missouri.

## JURISDICTION AND VENUE

9. In addition to its headquarters being in St. Louis County, Build-a-Bear conducts substantial business in St. Louis County, including, but not limited to sales and marketing of stuffed animals and characters.

10. This Court has personal jurisdiction over Build-a-Bear because it has solicited business in the State of Missouri, conducts business in the State of Missouri, has committed the acts described below in the State of Missouri and otherwise has sufficient minimum contacts with the State of Missouri.

11. Venue is proper in this Court because a substantial portion of the events giving rise to the claims asserted in this Petition occurred in St. Louis County, Missouri.

FACTUAL ALLEGATIONS

12. Build-a-Bear is in the business of selling and marketing stuffed animals and characters. According to its website, Build-a-Bear has sold 160 million stuffed dolls. According to its 2020 Form 10-K filed with the Securities and Exchange Commission, Build-a-Bear conducts business through its website and operates 305 stores in the United States. Pursuant to these operations, Build-a-Bear maintains a database with information about more than 10 million consumers.

13. Through the Do Not Call Registry maintained by the Federal Trade Commission, consumers may register their telephone numbers and express their unwillingness to receive unsolicited text messages.

14. Plaintiff registered his mobile phone number, 270-871-XXXX, with the Do Not Call Registry on May 4, 2008.

15. Plaintiff purchased three stuffed animals through Build-a-Bear's website in August 2020. To the best of his knowledge, Plaintiff was not aware of consenting to receiving text messages from Build-a-Bear.

16. In November 2020, Build-a-Bear began texting Plaintiff text messages to his mobile phone via SMS short code 34345. Each text started with the abbreviation "BABW," short for "Build-a-Bear Workshop." The text messages promoted the sale of stuffed animals and supplied short hyperlinks to the Build-a-Bear website or social media.

17. On November 18, 2020, Build-a-Bear sent the following text message to Plaintiff:

> BABW: Good Morning, Friend! Join us today for Merry Gifting LIVE. Deal reveals, great gift ideas and more. Starts at 10am CST and Facebook https://bit.ly/36Sn24y

18. On November 25, 2020, Build-a-Bear sent the following text message to Plaintiff:

> BABW: Friend, guess what? You can save for Black Friday! Furry friends starting online at $8 and more deals. Shop now for your Nice List. https://bit.ly/35Vtetc

19. On November 29, 2020, Build-a-Bear sent the following text message to Plaintiff:

> BABW: Psst! Do not miss out, Friend! CyBEAR Monday starts NOW. Take 40% off furry friends online and save on more deals! https://bit.ly/2JhY2f5

20. Later on November 29, 2020, Plaintiff responded by texting "Stop" twice. Build-a-Bear replied twice with the following message:

> You have been opted out and will receive no further messages from Build-A-Bear Alerts, 877-789-2327 and Guest.Services @buildabear.com for assistance.

21. Notwithstanding Plaintiff's purported opt out, on December 7, 2020, Build-a-Bear sent the following message to Plaintiff:

> BABW: The Christmas Countdown is on, Friend! Furry friends start at $8 online for a limited time. It's not too late to deliver hugs in time! www.buildabear.com.

22. Plaintiff against responded by texting "Stop." Build-a-Bear again replied,

> You have been opted out and will receive no further messages from Build-A-Bear Alerts, 877-789-2327 and Guest.Services @buildabear.com for assistance.

23. Notwithstanding Plaintiff's repeated attempts to opt out, on December 17, 2020, Build-a-Bear sent the following message to Plaintiff :

> BABW: We've got your back, Friend! Make unique gifts online and select pickup in store or NEW same-day delivery! You've got this, Santa! https://bit.ly/34l5k9f

24. Later on December 17, Plaintiff texted back in frustration, "I've told you to stop quit harassing me." Build-a-Bear replied, "Sorry, we're unable to reply to individual text messages.

4

We invite you to check out all the fun stuff on buildabear.com—if you need help, our team will be happy to assist you!"

25. Later on December 17, Plaintiff responded by texting "Stop" in response four more times. Build-a-Bear made the same response as to the prior "stop" texts ("You have been opted out ….").

26. On January 21, 2021, Build-a-Bear sent the following text message to Plaintiff:

> BABW: Hi, Friend! Bear hugs make the best gift, especially when its National Hug Day! Shop huggable friends online starting at only $10. https://bit.ly/2LRZvKo

27. On January 26, 2021, Build-a-Bear sent the following text message to Plaintiff:

> BABW: PRO TIP—Order sweet gifts by tomorrow for delivery in time for Valentine's Day using standard shipping. Channel Your Inner Cupid! https://bit.ly/2NZP1JG

28. Later on January 26, Plaintiff texted back twice: "Stop" and "Quit." This prompted two more identical responses ("You have been opted out ….").

29. Plaintiff's efforts to opt out of text messages show that Build-a-Bear's systems for opting out are nonfunctional and that consumers were powerless to opt out of Build-a-Bear's text messages.

30. According to its Global Privacy Policy as of January 2021, Build-a-Bear "honors a 'once out—always out' policy. Once you opt out, you are opted out of that type of communication and that brand until we are explicitly told in writing to opt you back in."

31. Even when Plaintiff repeatedly and unambiguously revoked consent, Build-a-Bear knowingly and willfully sent several text messages to Plaintiff, a member of the Do Not Call Registry, in violation of its "once out—always out" policy. After his revocations, Plaintiff never explicitly told Build-a-Bear in writing that he was consenting to receive text messages.

5

32. Plaintiff maintained his registration on the Do Not Call Registry because he did not want to receive unwelcome and annoying communications like the text messages he received from Build-a-Bear. Plaintiff was annoyed by the text messages he received from Build-a-Bear. He felt that the text messages, particularly after his repeated requests to opt out, were intrusive and that they interfered with his use and enjoyment of his telephone.

## CLASS ACTION ALLEGATIONS

33. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

34. Plaintiff brings this action on behalf of himself and the following two described classes in accordance with Federal Rule of Civil Procedure 23:

> **Internal Do Not Call Class**: All natural persons residing in the United States who (1) received two or more text message solicitations on their cellular phone from Build-a-Bear within a 12-month period from September 24, 2017 to the date of class certification; and (2) prior to receiving any such text message solicitations, had revoked consent to receiving such text message solicitations from Build-a-Bear by texting "Stop" or "Quit," in whole or part, in response to a text message solicitation from Build-a-Bear.

> **Do Not Call Registry Class**: All natural persons residing in the United States who (1) registered their telephone number(s) with the National Do Not Call Registry; (2) at least 31 days after Do Not Call registration and from September 24, 2017 to the date of class certification, received two or more text message solicitations from Build-a-Bear on their cellular phone within a 12-month period; and (3) prior to receiving any such text message solicitations, had revoked consent to receiving text message solicitations from Build-a-Bear Bear by texting "Stop" or "Quit," in whole or part, in response to a text message solicitation from Build-a-Bear.

35. Plaintiff maintains the right to redefine the Classes as necessary to reflect the developing facts as litigation and discovery progresses.

36. The Classes are numerous which makes joinder of individual plaintiffs impractical. The actual number of Class Members is not precisely known, but each Class is likely to consist of at least 40 and possibly hundreds of individuals. Build-a-Bear has information that will allow the number of members in each Class to be more precisely determined.

37. This litigation presents several questions of law and fact that are common to both Plaintiff and the Classes, and these questions predominate over any questions that may affect individual class members. These questions are, but not limited to the following:

    a.    Whether Build-a-Bear sent text messages to persons who had previously registered their telephone numbers with the National Do Not Call Registry;

    b.    Whether Build-a-Bear sent text messages to members of the Do Not Call Registry without their consent;

    c.    Whether Build-a-Bear sent text messages to members of the Do Not Call Registry after those persons sent communications revoking their consent;

    d.    Whether Build-a-Bear sent text messages to members of the Do Not Call Registry for the purpose of advertising any property, goods, or services;

    e.    Whether Build-a-Bear instituted procedures for maintaining a list of persons who request not to receive telemarketing calls;

    f.    Whether Build-a-Bear recorded residential telephone subscribers' requests for exclusion from telemarketing calls and honored those requests within a reasonable time from the requests being made; and

    g.    Whether Build-a-Bear willfully or knowingly violated the TCPA and its regulations.

38. Plaintiff's claims are typical to all Class Members. Through a common course of misconduct, including Build-a-Bear's failure to maintain effective systems for Class Members to opt out of text messages, Plaintiff and Class Members suffered similar types of harm.

39. Plaintiff will fairly and adequately represent and protect the interests of Class Members. Plaintiff retained experienced counsel with the necessary expertise and resources to prosecute this class action litigation. Plaintiff and his counsel do not anticipate circumstances where Plaintiff's interests would conflict with those of Class Members.

40. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The value of Class Members' claims is low enough that it is not economical for Class Members to individually litigate their claims. Proceeding as a class will prevent inconsistent rulings and judgments.

41. Build-a-Bear acted on grounds that generally apply to the Classes such that injunctive relief and money damages is appropriate. Such grounds include injunctive relief to prevent Build-a-Bear from texting members of the Do Not Call Registry who have not consented or those who have revoked their consent to receive text messages.

COUNT I
VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT
(47 U.S.C. § 227, et seq.)
(Individually and on Behalf of the National Do Not Call Registry Class)

42. Plaintiff re-alleges all preceding paragraphs of this Complaint and incorporates them here by reference.

43. The TCPA grants a private right of action to a person who receives more than one telephone call within a 12-month period in violation of TCPA laws and regulations protecting members of the Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

44. For purposes of the TCPA, "telephone calls" include text messages. *See* Federal Communications Commission, Public Notice, *Text Message Senders Must Comply with the Telephone Consumer Protection Act*, DA 16-1299 (Nov. 18, 2016); *see generally Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

45. TCPA regulations forbid telephone solicitations to any residential telephone subscriber who registered his or her telephone number on the Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2).

46. For purposes of the TCPA, "telephone solicitation" is defined as a "call or message for the purpose of encouraging the purchase … [of] property, goods, or services" but excludes a call or message "to any person with that person's prior express invitation or permission." 47 U.S.C. § 227(a)(4).

47. At all times relevant to the allegations in this Complaint, Plaintiff was a residential telephone subscriber with his telephone number registered to the Do Not Call Registry.

48. Within a 12-month period, including but not limited to the period from November 2020 through the date of the filing of this Complaint, Build-a-Bear sent more than one text message to Plaintiff. The text messages encouraged Plaintiff to purchase Build-a-Bear's goods and services, specifically the stuffed animals and characters that Build-a-Bear constructs and offers for sale.

49. Plaintiff did not invite Build-a-Bear to send him text messages or grant Build-a-Bear permission to send him text messages. Assuming strictly for the sake of argument that Plaintiff ever granted prior consent to text messages from Build-a-Bear, Plaintiff unambiguously revoked consent through text messages to Build-a-Bear on November 29, 2020, December 7, 2020, December 17, 2020, and January 26, 2021.

9

50. A person aggrieved by violations of TCPA laws and regulations protecting members of the Do Not Call Registry may pursue injunctive relief; recover actual monetary loss or up to $500 per each violation, whichever is greater; or both. If violations of TCPA regulations protecting members of the Do Not Call registry are knowing or willful, the damages may be tripled. 47 U.S.C. § 227(c)(5).

51. Because Build-a-Bear disregarded Plaintiff's repeated attempts to revoke consent to receive text messages, because its systems for revoking consent by text message are ineffective and nonfunctional, and because Build-a-Bear was on notice that its system for revoking consent was ineffectual, Build-a-Bear's violations are knowing and willful.

52. Plaintiff and the Class accordingly demand judgment against Build-a-Bear for statutory damages, treble damages, attorney fees and costs, and any other relief provided by law.

COUNT II
VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT
(47 U.S.C. § 227, et seq.)
(Individually and on Behalf of the National Internal Do Not Call Class)

53. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

54. The TCPA grants the Federal Communications Commission authority to issue regulations protecting residential telephone subscribers' right to avoid receiving telephone solicitations to which they object. *See* 47 U.S.C. § 227(c).

55. The TCPA grants a private right of action to a person who receives more than one telephone call within a 12-month period in violation of TCPA laws and regulations protecting telephone subscribers' right to avoid telephone solicitations to which they object. *See* 47 U.S.C. § 227(c)(5).

56. The regulations implementing the TCPA provide that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls …." 47 C.F.R. § 64.1200(d).

57. The regulations implementing the TCPA further provide: "Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request …." 47 C.F.R. § 64.1200(d)(3).

58. Within a 12-month period, including but not limited to the period from November 2020 through the date of the filing of this Complaint, Build-a-Bear sent more than one text message to Plaintiff. The text messages encouraged Plaintiff to purchase Build-a-Bear's goods and services, specifically the stuffed animals and characters that Build-a-Bear constructs and offers for sale.

59. Plaintiff did not invite Build-a-Bear to send him text messages or grant Build-a-Bear permission to send him text messages. Assuming strictly for the sake of argument that Plaintiff ever granted prior consent to text messages from Build-a-Bear, Plaintiff unambiguously revoked consent through text messages to Build-a-Bear on November 29, 2020, December 7, 2020, December 17, 2020, and January 26, 2021.

60. In violation of 47 C.F.R. § 64.1200(d)(3), Build-a-Bear did not record Plaintiff's revocations of consent or place Plaintiff's name and telephone number on its internal do-not-call lists within a reasonable time after such revocations were made. In further violation of 47 C.F.R. § 64.1200(d)(3), Build-a-Bear also did not honor Plaintiff's request to stop sending unwanted telemarketing texts.

61. A person aggrieved by violations of TCPA laws and regulations protecting residential telephone subscribers' right to avoid receiving telephone solicitations to which they object may pursue injunctive relief; recover actual monetary loss or up to $500 per each violation, whichever is greater; or both. If violations of such regulations are knowing or willful, the damages may be tripled. 47 U.S.C. § 227(c)(5).

62. Because Build-a-Bear disregarded Plaintiff's repeated attempts to revoke consent, because it did not maintain effective procedures to internally record and honor such revocations of consent, and because Build-a-Bear was on notice that its systems for internally recording and honoring revocations of consent were ineffectual, Build-a-Bear's violations are knowing and willful.

63. Plaintiff and the Class accordingly demand judgment against Build-a-Bear for statutory damages, treble damages, attorney fees and costs, and any other relief provided by law.

## PRAYER FOR RELIEF

Plaintiff Benjamin Ruby prays for relief as follows:

a. Class certification of each class under Federal Rule of Civil Procedure 23 and appointment of the undersigned counsel as Class Counsel.

b. Damages in an amount to be determined at trial, or in the alternative, statutory damages under the TCPA of no less than $500 per violation, and up to $1,500 per each violation determined to be willful.

  c. All other damages and relief authorized by statute or law, including but not limited to attorney fees and costs.

  d. A decree enjoining Defendant from further violations of the TCPA including, but not limited to, violations of TCPA regulations protecting members of the Do Not Call Registry.

  e. All courts costs and requiring Build-a-Bear to pay for class administration.

  f. All applicable pre-judgment and post-judgment interest.

  g. Any other and further relief this Court deems just and equitable.

**JURY TRIAL DEMANDED**

**BUTSCH, ROBERTS & ASSOCIATES LLC**

By: /s/David T. Butsch
David T. Butsch #MO37539
Christopher E. Roberts #MO61895
231 South Bemiston Ave., Suite 260
Clayton, MO 63105
(314) 863-5700 (telephone)
(314) 863-5711 (fax)
butsch@butschroberts.com
roberts@butschroberts.com

Shawn J. Wanta (admitted *pro hac vice*)
Scott Moriarity (admitted *pro hac vice*)
BAILLON THOME JOZWIAK & WANTA LLP
100 South Fifth Street, Suite 1200
Minneapolis, MN 55402
Telephone: (612) 252-3570
Fax: (612) 252-3571
samoriarity@baillonthome.com
sjwanta@baillonthome.com

Attorneys for Plaintiff